In re the MARRIAGE OF Dennis L. DUGGAN and Rebecca A. Duggan.

Upon the Petition of Dennis L. Duggan, Appellee,

and

Concerning Rebecca A. Duggan, Appellant.

No. 01–1887.

Supreme Court of Iowa.

April 2, 2003.

David H. Correll of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC, Cedar Falls, for appellant.

Max E. Kirk and Jen Bries of Ball, Kirk & Holm, P.C., Waterloo, for appellee.

TERNUS, Justice.

In this appeal, the appellant, Rebecca Duggan, asks to be designated as the surviving spouse on her former husband's pension plan, and asserts that she is entitled to one-half of any cost-of-living increases in the monthly benefit payable under the plan. We grant the requested relief. In doing so, we modify and affirm

the court of appeals' decision and affirm the district court judgment as modified.

## I. Background Facts and Proceedings.

Appellee, Dennis Duggan, and appellant, Rebecca Duggan, were married in 1965. They have five children. At the time of this action only the youngest child remained at home; another child was attending college. The couple's other children were self-supporting adults.

Rebecca is a registered nurse and worked throughout the marriage, primarily at a local hospital. In January 2000, she voluntarily left her employment at the hospital to accept a position with Cedar Valley Hospice where she would only have to work thirty hours per week. Although this change resulted in a decrease in income, Dennis concurred in Rebecca's decision to switch jobs. In 2000, Rebecca earned $24,340 from her employment with Hospice.

Dennis also worked consistently during the marriage. From 1972 until shortly before this action was filed, he worked as a firefighter with the Waterloo fire department. Due to his work schedule—twenty-four hours on and then forty-eight hours off—he also worked other jobs in addition to his firefighter position. These jobs included home building and remodeling work, high school basketball coaching, and consulting on the safe handling of hazardous waste materials.

In August 2000 Dennis, then fifty-five years old, opted to take early retirement from the fire department. At the time, he was the assistant fire chief and earned $51,195 annually. Since his retirement Dennis has worked sporadically. Although he is in good health, he maintains that he would just "like to be retired" and does not intend to work for compensation in the future.

Upon retirement, Dennis became eligible to receive pension benefits through the Municipal Fire and Police Retirement System of Iowa ("System"). After consulting with Rebecca, he chose a guaranteed ten-year payout from among several payment options. Under this option, Dennis is guaranteed to receive ten years of monthly benefits. If he dies during the ten years, benefits for the remainder of the ten-year period are paid to his beneficiary. After ten years, Dennis will continue to receive his monthly benefit, but if he dies, the benefits will cease entirely. At the time of trial Dennis's monthly pension benefit was $4132, with a guaranteed minimum payout of $446,256 over the remaining nine years of the ten-year period.

In October 2000 Dennis filed a petition for dissolution of marriage. Dennis was fifty-six years old at the time of trial; Rebecca was fifty-four. In its decree, the district court awarded the parties joint custody of their minor son, with primary physical care given to Rebecca. Dennis was ordered to pay $670 per month in child support, an obligation that would last less than two years given the age of their youngest child. No alimony was awarded.

After a slight modification in a post-judgment ruling, the court awarded Dennis net marital property (after deducting his share of marital debt) having a value of $157,964 and Rebecca net marital property with a value of $167,550. Therefore, Rebecca received $9586 more than Dennis. Although both parties' IRAs were distributed as marital property, Dennis's pension benefits were not. The court treated these benefits as income to Dennis rather than as a marital asset and therefore ordered that Dennis was to retain all rights to his pension.

Rebecca's appeal was transferred to the court of appeals. That court ruled the district court failed to make an equitable

distribution of the parties' assets when it did not include Dennis's pension benefits as marital property. Therefore, it modified the district court decree by providing that the monthly pension payments should be divided equally between Rebecca and Dennis. The court of appeals also modified the distribution of the remaining marital property by dividing it equally between the parties, with each receiving $166,208.[1]

## II. Issues Presented on Further Review.

This court granted Rebecca's petition for further review. In her petition Rebecca claims the court of appeals erred in three particulars: (1) failing to specifically order that she be designated as the surviving spouse for purposes of Dennis's pension benefits; (2) failing to provide that Rebecca was to receive one-half of any cost-of-living adjustments to the monthly pension payments; and (3) failing to require Dennis to reimburse Rebecca for an amount equivalent to one-half of the benefits received by Dennis from the date of the original dissolution decree on September 27, 2001.

Although Dennis no longer disputes that Rebecca should be awarded one-half of his pension benefits, he resists her request to be named as the surviving spouse. He also contends it would be inequitable to now require him to reimburse Rebecca for the benefits he has already received and spent. Finally, he requests that we decrease his child support payments because that obligation was computed on the now-erroneous assumption he would receive his entire monthly pension check.

## III. Scope of Review.

Dissolution actions, as equitable proceedings, are reviewed de novo. In re Marriage of Benson, 545 N.W.2d 252, 253 (Iowa 1996); Iowa R.App. P. 6.4. We give "weight to the fact findings of the trial court, especially when considering the credibility of witnesses," but these findings do not bind us. In re Marriage of Knickerbocker, 601 N.W.2d 48, 51 (Iowa 1999); accord Iowa R.App. P. 6.14(6)(g).

## IV. Distribution of Dennis's Pension Benefits.

A. General legal principles governing pensions in dissolution actions. Iowa law requires that the assets of parties in a dissolution-of-marriage proceeding be divided equitably between them. See Iowa Code § 598.21(1) (2001) (listing factors to consider). "[P]ensions are characterized as marital assets subject to division in dissolution actions just as any other property." Benson, 545 N.W.2d at 255. Although the particular benefits at issue in this case are derived from a statutory retirement plan, see generally Iowa Code chs. 410, 411 (providing for retirement system for police officers and fire fighters), this court has held that a fireman's pension is marital property subject to division in a dissolution proceeding. See In re Marriage of Branstetter, 508 N.W.2d 638, 640–42 (Iowa 1993).

The issue in the present case goes a step beyond the divisibility of pension benefits, however. At stake here is the former spouse's rights to such benefits in the event the retired employee-spouse dies first. Because the benefit plan at issue here is statutory in nature, we must look to chapters 410 and 411 in the first in-

1. The court of appeals also addressed the parties' disputes concerning college education subsidies for the parties' two youngest children and attorney fees. Because neither party challenges the court's resolution of these issues, we do not address these matters in our opinion.

stance to determine the rights of a former spouse.

Although chapter 410 provides for the payment of pension benefits to a member's "surviving spouse" under certain specified conditions, see Iowa Code § 410.10, a former spouse is not considered a "surviving spouse" unless "the division of assets in the dissolution of marriage decree ... grants the former spouse rights of a spouse under this chapter," *id.* § 411.1(19) (now found at Iowa Code § 411.1(20) (2003)). The governing statutes and the System's rules set out a procedure for granting the former spouse such rights. Chapter 411 permits the assignment of benefits payable under the retirement plan in order to enforce "marital property orders." *See* Iowa Code § 411.13. The System has adopted by rule a model marital property order. *See* Mun. Fire & Police Ret. Sys. r. 12.10. One requirement for such an order is that it set out the "[e]xtent (if any) to which a former spouse is to be treated as the surviving spouse upon the death of the member." *Id.* r. 12.10(1)(d). This rule further provides that "[a] former spouse shall be treated as a surviving spouse only if specifically designated as such pursuant to section 411.1(19)." *Id.* r. 12.10(3)(a). If the dissolution decree states that the former spouse shall be designated as the surviving spouse, the System's rules require the decree to also state "the dollar amount or percentage of the total surviving spouse benefit to be paid by the system to the former spouse." *Id.* r. 12.10(3)(b).

■ B. *Rebecca's entitlement to survivorship rights.* Although the relevant statutes and rules set forth the procedure for designating a former spouse as the surviving spouse, the circumstances under which that designation should occur depend on the facts of each case and whether the allowance of survivorship rights effectuates an equitable distribution of the parties' assets. Here, it has been properly determined that Dennis's monthly benefits, earned entirely during the parties' marriage, should be divided equally between Dennis and Rebecca. As noted earlier, these benefits are guaranteed for ten years. Under the court of appeals' decision, Dennis and Rebecca will each receive one-half of these payments, but only during Dennis's lifetime. Upon Dennis's death the remaining benefits payable during the ten-year period will go to his designated beneficiary because the current dissolution decree makes no provision for Rebecca's designation as the surviving spouse. Therefore, only by giving Rebecca survivorship rights as to her share of the payments can we ensure that she will receive her one-half share of Dennis's pension plan.[2]

Dennis argues that giving Rebecca survivorship rights is unfair because she was not required to designate him as the beneficiary on her pension plan. We think, however, that the parties' pension benefits are not sufficiently similar so as to require identical treatment. Rebecca's pension plan was rolled into an IRA prior to the dissolution and the value of the IRA was included in the court's division of marital

---

**2.** Theoretically, we could guarantee that Rebecca receives her share of Dennis's pension plan by awarding her one-half the present value of the pension benefits. *See In re Marriage of Branstetter,* 508 N.W.2d at 642 (stating one way to divide pension benefits is "to assign a value to the benefits, based on their present worth, and award that amount").

Requiring Dennis to pay Rebecca this amount at this time may, however, work a hardship on Dennis since he must wait to receive his portion of the pension in the form of monthly payments. Due to this fact and the fact that neither party requests this method of distribution, we consider it no further.

property. Thus, Dennis has already received his share of Rebecca's pension plan. Rebecca, on the other hand, will receive her share of Dennis's pension benefits in the event of his untimely death only if she is designated as his surviving spouse. For this reason, we modify the disposition of this case by the court of appeals to provide for the designation of Rebecca as Dennis's surviving spouse under his retirement plan to the extent of fifty percent of the benefits payable under the plan.

■ C. *Rebecca's entitlement to cost-of-living increases.* Rebecca also complains of the court of appeals' failure to award her one-half of any cost-of-living adjustments to the monthly benefits payable under Dennis's retirement plan. Dennis contests Rebecca's entitlement to a proportionate share of any increases, relying on language from our decision in *Benson.*

■ In *Benson,* this court stated that any posttrial increase in pension benefits should not be considered marital property subject to division in the dissolution action. 545 N.W.2d at 255. In making this statement, we relied on the general rule that "[o]nly the net worth of the parties *at the time of trial* is relevant in adjusting their property rights." *Id.* (emphasis added). The rationale for this rule is the notion that "[a]n increase in pension rights *resulting from contributions made after a decree of dissolution but before retirement* is the result of efforts made after the dissolution" and therefore "should not be included in the allocation of assets of the marital estate." *In re Marriage of Klein,* 522 N.W.2d 625, 628 (Iowa Ct.App.1994) (emphasis added).

An examination of the rationale for the rule reveals why the rule does not apply in this case. While the cost-of-living increases at issue here will accrue after the parties' marriage has been dissolved, they will also occur after the employee-spouse has retired. Thus, these increases are passive in the sense that they are not attributable to any efforts made by Dennis, the employee-spouse, after the dissolution. Rather, these increases flow from Dennis's employment during the marriage; in other words, they are a result of the joint efforts of the parties. Thus, we hold cost-of-living adjustments accruing postdissolution should be treated as marital property where the employee-spouse is retired at the time of trial. *See Moore v. Moore,* 114 N.J. 147, 553 A.2d 20, 23 (1989) (holding that postretirement cost-of-living increases should be included in equitable distribution award to the extent they are attributable to portion of pension earned during the marriage). Accordingly, Rebecca is entitled to one-half of any such adjustments.

■ D. *Repayment of pension benefits already received.* Dennis asserts Rebecca should not receive her share of the pension benefits to the extent they have already been paid to him. To adopt this argument, however, would be contrary to the general rule that we divide the property the parties own *at the time of the dissolution. See In re Marriage of Muelhaupt,* 439 N.W.2d 656, 661 (Iowa 1989). We see no reason to depart from this rule and reduce Rebecca's interest in this marital asset simply because Dennis has received more than his rightful share. Although he claims to have already spent the benefits paid to him, his exhaustion of this asset is no reason to reduce Rebecca's share of the marital property. Dennis certainly has other assets that can be liquidated or used as collateral for a loan to repay Rebecca and thereby effectuate the equitable division of assets envisioned by Iowa law.

## V. *Division of Marital Property.*

Having determined that the pension benefits are included as marital property

and that each party should be awarded one-half the marital assets, we now turn to a division of those assets. From our review of the record it appears the court of appeals modified the district court's distribution of the marital property using the figures set forth in the court's initial decree. That decree was later corrected, however, in the court's ruling on a posttrial motion. Using the figures set forth in the amended decree, we calculate the marital property—excluding the fireman's pension benefits—to have a value of $329,916, and marital debt to total $4420. Under the court of appeals' decision, which we affirm, Dennis and Rebecca are each entitled to one-half of the parties' net assets. Thus, on remand, the district court should modify its distribution of the parties' marital property to accomplish an equal division of their assets, taking into account any inequities in the assignment of marital debt.

## VI. *Child Support.*

■ When the district court calculated Dennis's child support obligation, it considered the pension benefits as income to Dennis. In view of the fact that the pension benefits have now been divided as marital property rather than being treated as income, Dennis asks us to recalculate his child support. (It appears from the record that Dennis's obligation for child support has now ended because the parties' youngest child is no longer a minor.) Rebecca asserts Dennis's child support obligation is appropriate, arguing "[t]he parties are virtually the same age, have similar education and training, and are both capable of gainful employment." She claimed before the district court that Dennis's "lack of earned income is self-inflicted," and asserts on appeal that it is unconscionable for Dennis to enjoy his retirement while she must continue to work. We agree.

Dennis has offered no reason for his failure to obtain employment other than his desire to be retired. Moreover, he suffers from no ailments or disabilities that prevent him from earning income as he did before his retirement. As the trial court found, "Dennis is in good health and is capable of working and earning additional income, at a management level position, teaching, consulting, or in construction." Under our case law, "a party may not claim inability to pay child support when that inability is self-inflicted or voluntary." *In re Marriage of Foley,* 501 N.W.2d 497, 500 (Iowa 1993). In view of Dennis's earning ability and his voluntary choice to remain unemployed, we decline to adjust his child support obligation.

## VII. *Summary and Disposition.*

We affirm the court of appeals' modification of the district court's decree with the following changes. Upon remand the district court shall require the preparation of a marital property order based on the System's rule 12.10 that assigns to Rebecca one-half of the monthly pension benefits payable to Dennis, including one-half of any cost-of-living adjustments that have been made since Dennis retired and began receiving benefits. In addition, the order shall provide that Rebecca be designated as the surviving spouse for one-half of Dennis's pension. For any payments received by Dennis from the date of the original dissolution decree through the date of the System's implementation of the marital property order, Dennis shall be required to pay to Rebecca one-half of such payments. We leave it to the judgment of the district court to devise a workable repayment plan. The district court shall also reexamine its property distribution to effectuate an equal division of the parties' marital assets. The parties shall be required to complete any additional

documentation necessary to give effect to the court's decree.

**DECISION OF COURT OF APPEALS AFFIRMED AS MODIFIED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED; CASE REMANDED WITH DIRECTIONS.**